Joseph J. McGARRY, Jr., et al.

v.

Alfred J. COLETTI et al.[1]

No. 2009–277–Appeal.

Supreme Court of Rhode Island.

Dec. 15, 2011.

1. "John Doe" and "ABC Corporation" also were named as defendants in the complaint as "yet unknown creditors, equitable interest holders and/or mortgagors of the Coletti Property which can not be ascertained with certainty at the time of filing [of the complaint]." However, only Alfred J. Coletti answered the complaint, stating that he was "without knowledge with regard to the status of the other Defendants herein."

 

before the plaintiffs purchased it in the late 1980s, and that he continued to hold such title until the plaintiffs instituted this action in 2006. For the reasons set forth below, we affirm the judgment of the Superior Court.

Paul J. Bupivi, Esq., for Plaintiff.

Dennis J. Tente, Esq., for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

This case arises out of a dispute over real property in the City of Warwick. The defendant, Alfred J. Coletti, a dentist, appeals from a Superior Court judgment entered in favor of the plaintiffs, Joseph J. and Anita L. McGarry, a husband and wife, on their claims for trespass and to quiet title and against the defendant on his counterclaim for adverse possession. The defendant argues before us that the trial justice overlooked clear and convincing evidence of the defendant's open, notorious, hostile, and continuous use of a disputed parcel of property. Doctor Coletti additionally contends that the trial justice erred, as a matter of law, in applying an incorrect standard in determining that the defendant's use of the parcel was not hostile. According to the defendant, evidence at trial established that he obtained title to the disputed parcel by adverse possession

## I

### Facts and Procedural History[2]

Since 1971, defendant has resided on property located on Gauvin Drive in Warwick. In 1972, after purchasing the lot that abuts his residential lot on the east, defendant built an office building on it for his dental practice. In 1978, plaintiffs purchased the lot that sits directly north of defendant's residential lot.

Immediately to the north of the lot on which defendant's dental office is located and to the east of plaintiffs' and defendant's residential lots is property designated as Assessor's Plat No. 250, lot No. 65 (lot No. 65 or buffer property). From 1973 to 1988, lot No. 65 was owned by Country Club Estates, a homeowners' association, and it served as a buffer property between residential and commercial land. In 1988, plaintiffs purchased this buffer property.[3]

The defendant completed construction of his office building in 1972. The defendant testified that in 1973, in an effort to enhance the "unattractive" view from his office,[4] he took measures to improve the view by maintaining a portion of the buffer property that abutted his office (the disputed parcel).[5] Specifically, defendant tes-

2. The pertinent facts of this case were adduced at a bench trial that took place on January 20, 2009.

3. Trial testimony alternated between 1988 and 1989 as the year of purchase. For simplicity's sake, and because it is not determinative of any issue on appeal, we assume the year of purchase to be 1988.

4. The defendant's office building is located about nine inches from the southern line of the buffer property and his rear windows face the property.

5. The defendant testified that in 1972, the buffer property was in an "unkept" condition: it was "wooded," "wild," and in need of "some work."

tified that he laid crushed stone, planted pine, willow, and "decorative" trees, and placed bird feeders on the disputed parcel. After making these initial "improvements," defendant said, he continued to maintain the disputed parcel. He testified that he refilled the bird feeders "periodically," put out salt licks to attract deer, and about twelve years later, laid more crushed stone.

Starting in 1973, defendant also paid a landscaper, John Moretti, to take care of the area around his office building, including the disputed parcel.[6] Mr. Moretti testified that he started "clean[ing]" the disputed parcel after defendant mentioned to him that there were "a lot of papers getting stuck there" and "stuff starting to grow." According to Mr. Moretti, his "primary function" with respect to the parcel "was to pick up debris" and to clear away "weeds and anything that was dead or broken," including branches and trees. Mr. Moretti testified that he maintained the disputed parcel annually from March until November, and that he performed spring and fall clean-ups of the parcel.

The defendant's reasons for maintaining the disputed parcel were aesthetic: he wanted to keep everything associated with his office building "attractive" and did not want "weeds and everything growing up there." The defendant testified that the "thousands" of patients that visited his office over the years "really appreciated" and "enjoyed" the pleasant view of the parcel.[7] He also testified that in the sum-

mertime, his employees would "at times" eat lunch on the parcel.

The defendant testified that from 1973 until 1988, Country Club Estates did not maintain lot No. 65, nor did it ever contact defendant about the disputed parcel. Likewise, defendant testified, he never contacted Country Club Estates about this land. After plaintiffs purchased lot No. 65 in 1988, however, defendant made an offer to purchase it, which plaintiffs did not accept.[8] The defendant testified that despite his offer being rebuffed, he continued to exclusively maintain the disputed parcel until the institution of this action in 2006.

There was inconsistent testimony at trial with respect to the exact measurements of the disputed parcel. The defendant testified that Mr. Moretti maintained the southerly 5,000 square feet of the buffer property: the entire one-hundred-foot width of the parcel by the southerly "[fifty] to [sixty] feet" going north. The defendant further testified that the crushed stone covered an area of "[a]pproximately [forty] by [fifty] feet" and was laid in a semi-circular pattern "from the west side of the building going out [fifty] feet and then coming back to the east side of the building." Mr. Moretti testified that although the crushed stone was laid in a semi-circle, it covered an area of only "approximately [ten] feet to maybe [twenty], [thirty] feet." Later in his testimony, however, Mr. Moretti indicated that "[m]aybe the farthest point [of the cleared area was fifty] feet."

---

6. In addition to providing landscaping services to defendant at both his home and his office, Mr. Moretti also was plaintiffs' landscaper.

7. One of defendant's patients, John Reis, testified about the presence of a "cleared area" with "rocks [and] stones" behind the office building. He testified that there was "not

much else to do" during dental surgery other than look out the windows at the "cleared area."

8. Mr. McGarry testified that defendant actually "had offered to buy [the buffer property] from [him] several times," but that he had refused.

Doctor Coletti also kept a dumpster of approximately "five feet high, four or five feet wide and * * * ten feet long" on a portion of lot No. 65 near the office building. The defendant testified that "from 1973 until the present," the dumpster was "always" located in the same spot on the buffer property. Mr. McGarry testified, however, that after he and his wife purchased the buffer property, he kept an eye on the dumpster, which "[e]very once in a while" migrated onto lot No. 65, and he had it removed by the dumpster company whenever he "saw it on [his] property"[9] In 2005, defendant paved an asphalt pad under the dumpster. That same year, Mr. McGarry noticed the pad, which he testified was encroaching ten to twenty feet inside the buffer property, and he "explained to [defendant] that that was [his] property and [that he] wanted [the pad] removed." At that point, defendant inquired whether he and Mr. McGarry "could come to some kind of agreement in purchasing the property," but Mr. McGarry refused. The defendant then agreed to have the dumpster removed.

On September 1, 2006, plaintiffs brought an action against defendant for trespass and private nuisance, and to quiet title. In their complaint, plaintiffs stated that they are the exclusive owners of the buffer property. They alleged that defendant intentionally encroached upon this property without their consent by paving a parking area on a portion of it, thereby committing trespass. According to plaintiffs, such trespass materially interfered with their reasonable use and enjoyment of the buffer property and constituted a private nuisance. The plaintiffs requested that title to the property be quieted in them, and

they asked for monetary and injunctive relief. The defendant answered and counterclaimed for adverse possession.[10]

A bench trial was held on January 20, 2009, after which the trial justice issued a written decision denying defendant's adverse possession claim and granting plaintiffs' claims for trespass and to quiet title. After outlining the elements of adverse possession, the trial justice made his findings. First, he found that although defendant "planted pine and willow trees, hung bird feeders in the trees, * * * laid crushed stone[,] * * * [and] clear[ed] the disputed area of dead branches and debris," he "did not erect any structures * * * [and] did not maintain the property in such a way that one would believe it to be [a] continuation of his commercial lot." The trial justice further found that "[t]he paved area encroaching onto the disputed property [was] the most open and notorious activity established by [defendant] in the thirty-three year span that [he] claims to have adversely possessed the property," and that this was insufficient to prove "by clear and convincing evidence that his use of the disputed property was open and notorious." In finding this, the trial justice noted that neither defendant nor Mr. Reis, his patient, were credible witnesses "because their testimony was vague and evasive." The trial justice determined that Mr. Moretti was a credible witness "because he perform[ed] landscaping services for both [plaintiffs] and [defendant], and because he ha[d] no interest in the outcome of the litigation." The trial justice noted, however, that Mr. Moretti "did not testify to any specific dates or time frames" within which he maintained the disputed parcel for defendant, and that his

9. Mr. McGarry testified that this happened on only "four or five" occasions.

10. The defendant originally counterclaimed for adverse possession "of the southerly 7,500 square feet" of the buffer property, but he later amended this figure to 5,000 square feet.

testimony actually hurt defendant's case because it "contradicted [defendant's] testimony as to the size of the area claimed."[11]

The trial justice also found that defendant "failed to establish hostile use of the property by clear and convincing evidence," and that he "failed to prove ten continuous years of adverse possession because he was not specific as to which ten-year period from 1972 [to] 2005 he was claiming adverse possession." Consequently, the trial justice denied defendant's adverse possession claim and granted plaintiffs' claim to quiet title. The trial justice also granted plaintiffs' trespass claim because defendant "entered onto [plaintiffs'] property by paving the dumpster pad without [their] consent."[12] The trial justice ordered that defendant pay to remove the pad and dumpster from plaintiffs' property. Judgment was entered on June 5, 2009, and defendant timely appealed on June 10, 2009.

## II

### Standard of Review

■ We give much deference "to the factual findings of a trial justice sitting without a jury in a civil case." *B.S. International Ltd. v. JMAM, LLC,* 13 A.3d 1057, 1062 (R.I.2011). We previously have made clear that we will not disturb such findings "unless [they] are clearly wrong or the trial justice misconceived or overlooked material evidence." *Lee v. Raymond,* 456 A.2d 1179, 1184 (R.I.1983). "[T]his standard applies in adverse possession cases." *Carnevale v. Dupee,* 853 A.2d 1197, 1200 (R.I.2004); *see also Lee,* 456 A.2d at 1184.

## III

### Discussion

■ Pursuant to G.L.1956 § 34–7–1, a person may acquire title to real property by adverse possession by satisfying several requirements. According to § 34–7–1, adverse possession occurs

"[w]here any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple * * *."

When a person fulfills these requirements, "the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever * * *." *Id.* We previously have held that "obtaining title by adverse possession requires actual, open, notorious, hostile, continuous, and exclusive use of property under a claim of right" for the statutory period. *Cahill v. Morrow,* 11 A.3d 82, 88 (R.I.2011). We also have made clear that "[t]he party who asserts that adverse possession has occurred must establish the required elements by strict proof, that is, proof by clear and convincing evidence." *Corrigan v. Nanian,* 950 A.2d 1179, 1179 (R.I.2008) (mem.).[13]

---

11. According to the trial justice, "Mr. Moretti testified that the area maintained extended only six to eight feet from [defendant's] northerly boundary line at one point, whereas [defendant] claims the maintenance extended [to] the entire [fifty] feet by [one hundred] feet area."

12. The trial justice did not make a ruling with respect to plaintiffs' private nuisance claim.

13. In addition, we recently pronounced that "courts have questioned 'whether the concept of adverse possession is as viable as it once was, or whether the concept always squares

On appeal, defendant first argues that the trial justice "was clearly wrong in disregarding the undisputed testimony of both [defendant] and [Mr.] Moretti when he found that [defendant] had not proved by clear and convincing evidence that his use of the disputed parcel was open and notorious." Specifically, defendant asserts that the trial justice erred in finding that Mr. Moretti testified that he only "occasionally * * * clear[ed] the disputed area of dead branches and debris," and that "he did not testify to any specific dates or time frames." The defendant points out that Mr. Moretti actually testified that he maintained the disputed parcel, every March until November, from the time that defendant's office building was built until 2005.

The plaintiffs argue in response that defendant failed to prove "open and notorious possession" by clear and convincing evidence. Specifically, plaintiffs contend that "Mr. Moretti's testimony shows that he never made any improvements to the disputed land, because he state[d] that he never cut live brush or live branches, never installed fencing, never performed any drainage work, and never maintained a lawn." According to plaintiffs, it was reasonable for the trial justice to rule that "in the absence of making improvements to, or erecting structures upon the land, merely picking up the debris, raking and removing dead brush, and pulling weeds during the lawn-mowing season" was insufficient to satisfy the "open and notorious" element of adverse possession.

 "[F]or adverse possession to occur, the use to which the land is put must be similar to that which would ordinarily be made by owners of similarly situated real estate." *Acampora v. Pearson*, 899 A.2d 459, 466–67 (R.I.2006) (quoting *Tavares v. Beck*, 814 A.2d 346, 352 (R.I. 2003)). "This requirement ensures that a claimant's use of the land was 'sufficiently open and notorious to put a reasonable property owner on notice of their hostile claim.'" *Id.* at 467 (quoting *Tavares*, 814 A.2d at 352). We previously have made clear that "no particular act to establish an intention to claim ownership is required to give notice to the world of the claim," and that "[i]t is sufficient for the claimant to go upon the disputed land and use it adversely to the true owner." *Lee*, 456 A.2d at 1183; *see also Carnevale*, 853 A.2d at 1201; *Anthony v. Searle*, 681 A.2d 892, 897–98 (R.I.1996). Once that happens, the owner "becomes chargeable with knowledge of whatever occurs on the land in an open manner." *Lee*, 456 A.2d at 1183; *see also Carnevale*, 853 A.2d at 1201; *Anthony*, 681 A.2d at 897–98.

In his decision, the trial justice cited the correct standard for determining "open and notorious" use and then went on to find that defendant "did not erect any structures on the [disputed parcel]," nor did he "maintain the [parcel] in such a way that one would believe it to be [a] continuation of his commercial lot." The trial justice also recounted the testimony of Mr. Moretti, whom he found to be credible, which revealed that "he picked up dead branches and debris from the disputed parcel only occasionally." In light of the "less-than-obvious uses by [defendant]" of the disputed parcel, the trial justice found that defendant had not proven by clear

with modern ideals in a sophisticated, congested, peaceful society.'" *Cahill v. Morrow*, 11 A.3d 82, 87 (R.I.2011) (quoting *Finley v. Yuba County Water District*, 99 Cal.App.3d 691, 160 Cal.Rptr. 423, 427 (1979)). We pointed to the various disadvantages of this

doctrine and noted that "it is not without an eyebrow raised at the ancient roots and arcane rationale of adverse possession that we apply the doctrine to * * * modern property dispute[s]." *Id.* at 87–88.

and convincing evidence that his use was "open and notorious."

Upon a review of the record, we are unable to discern any error on the part of the trial justice with respect to this finding. Giving deference to the trial justice's credibility findings, as we must, *B.S. International Ltd.*, 13 A.3d at 1062, we look to Mr. Moretti's testimony,[14] which reveals that after construction of defendant's office building was completed, defendant laid crushed stone and planted some trees on a portion of the buffer property located behind his office building. Mr. Moretti testified that he recalled the crushed stone being laid on "[a]t least two" occasions. Mr. Moretti further testified that he started "clean[ing]" this parcel after defendant mentioned to him that there were "a lot of papers getting stuck there" and "stuff starting to grow." According to Mr. Moretti, his "primary function" with respect to this parcel "was to pick up debris" and clear away "weeds and anything that was dead or broken," including branches and trees. Mr. Moretti testified that he performed this maintenance from March until November every year, and that he also performed spring and fall clean-ups. Finally, Mr. Moretti testified that he did not mow the disputed parcel, did not clear any live brush or trees, and did not put up any artificial or natural fences or walls.

In *Carnevale*, 853 A.2d at 1201, we held that a landowner met the "open and notorious" element of adverse possession because he frequently mowed the disputed land and maintained a fence that surrounded the land. We stated there that such actions "sufficiently attracted enough attention to place the world on constructive notice." *Id.* In *Acampora*, 899 A.2d at

467, we affirmed the Superior Court's finding that a landowner satisfied the "open and notorious" element of adverse possession when she "cut the lawn, maintained the property, and used [the disputed land] for outdoor activities." In so doing, we stated that "although the [landowner] did not plant the evergreen trees or maintain them, [she] did regularly mow and fertilize the grass up to, around, and beyond the trees." *Id.* We affirmed similar findings in other cases. *See, e.g., Anthony*, 681 A.2d at 898 (affirming finding that landowner satisfied all elements of adverse possession when he "plant[ed] trees, maintain[ed] a lawn over the disputed area and ma[de] other improvements including the erection of a rabbit hutch and two cold frames"); *Gammons v. Caswell*, 447 A.2d 361, 367, 368 (R.I.1982) (affirming finding that clearing away underbrush, planting lawns, establishing gardens, and planting trees was enough for the landowner to assert claim of ownership as to particular parcel of property).

In the case at hand, defendant did not maintain a lawn on the disputed parcel, nor did he erect a fence or any other structure. Although he laid crushed stone on the disputed parcel on two occasions, he did not satisfy the trial justice by clear and convincing evidence that such action was of sufficient magnitude to put the world on notice of his claim of ownership. Laying crushed stone is a more limited action than installing, and regularly mowing, a lawn and, without more, does not rise to the level of "open and notorious" use. The defendant also planted several trees on the disputed property. However, as he himself testified, the buffer property was "wooded" and "wild." Therefore, the trees

---

14. The trial justice found Mr. Moretti to be a credible witness "because he perform[ed] landscaping services for both [plaintiffs] and [defendant], and because he ha[d] no interest in the outcome of the litigation." In contrast, the trial justice found that defendant and Mr. Reis were not credible witnesses "because their testimony was vague and evasive."

that defendant planted may not have been sufficiently distinct from the trees that originally grew on the property, and we agree with the trial justice that defendant did not prove otherwise. Finally, although Mr. Moretti maintained the disputed property annually, his maintenance comprised primarily of "pick[ing] up debris" and clearing away "weeds and anything that was dead or broken." We agree with the trial justice that simply clearing an area of debris and dead branches and trees is insufficient to constitute "open and notorious" use.

 Although "no particular act [is required] to establish an intention to claim ownership," *Lee,* 456 A.2d at 1183, the requisite act must "put a reasonable property owner on notice" that his property is being claimed. *Acampora,* 899 A.2d at 467 (quoting *Tavares,* 814 A.2d at 352). We hold that the trial justice in this case did not err in finding that defendant's "less-than-obvious" maintenance of the disputed parcel would not have put plaintiffs on notice that their property was being used adversely to them. Thus, we affirm the trial justice's finding that defendant failed to satisfy the "open and notorious" element of adverse possession.[15] As a result, we also affirm the trial justice's denial of defendant's adverse possession claim, as well as his grant of plaintiffs' claims for trespass and to quiet title.

The defendant brings forth additional arguments on appeal. He argues that the trial justice erred as a matter of law when he found that the defendant failed to establish "hostile use" of the disputed parcel because "he did not occupy the property to a visible line." The defendant also asserts that the trial justice erred in finding that the defendant failed to prove ten continu-

ous years of adverse possession. However, because we affirm the trial justice's finding that the defendant did not meet the "open and notorious" element of adverse possession, we need not address these additional arguments.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record of the case shall be remanded to the Superior Court.

---

**15.** The trial justice noted that paving the asphalt pad was a considerably more "open and notorious" activity established by defendant.

However, it is clear that such activity does not meet the ten-year statutory requirement for adverse possession.