May 10, 2023

**Supreme Court**

No. 2020-182-Appeal.
(PC 18-2419)

The Union Cemetery Burial Society     :
      of North Smithfield

           v.              :

John D. Foisy et al.          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

The Union Cemetery Burial Society   :
    of North Smithfield

          v.             :

John D. Foisy et al.        :

Present:  Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  This case arises out of a real property dispute in the Town of North Smithfield (the Town).  The defendants, John D. Foisy and Donna L. Foisy, appeal from a judgment and order entered in favor of the plaintiff, The Union Cemetery Burial Society of North Smithfield (the UCBS).  On April 11, 2018, the plaintiff, alleging trespass and encroachment on its land by the defendants, filed a complaint in the Superior Court seeking declaratory and injunctive relief.  Thereafter, the defendants filed a counterclaim seeking declaratory and injunctive relief to quiet title pursuant to the doctrine of adverse possession.  On November 15, 2019, final judgment entered in favor of the plaintiff on its complaint, and final judgment entered against the defendants on their counterclaim.  The defendants filed a timely notice of appeal on November

- 1 -

25, 2019. For the reasons set forth herein, we vacate the judgment and remand this case to the Superior Court for further proceedings consistent with this opinion.

# I

## Facts and Travel[1]

The controversy in this case relates to real property in North Smithfield identified as Lot 142 on Assessor's Plat 9 (the UCBS parcel), of which the UCBS is the owner in fee simple, and Lot 132 on Assessor's Plat 9 (defendants' parcel), of which defendants are the owners in fee simple. The grandparents of Mr. Foisy, one of the instant defendants, originally acquired the defendants' parcel in 1922: that parcel is located at 38 Williams Street in North Smithfield. The defendants have continuously owned that original parcel since July 1, 1994.[2]

The dispute in this case stems from defendants' use of two separate smaller portions of land which abut their own parcel—*viz*., (1) the area referred to by the parties as "the northern encroachment;" and (2) the area referred to by the parties

---

[1] In view of the factually intensive nature of this adverse possession case, our summary of the context and of the eventual litigation must necessarily be extensive.

[2] The defendants' parcel was conveyed to Mr. Foisy's parents, and his parents subsequently conveyed the property to him in 1994. The plaintiff also conveyed two additional parcels of realty to defendants in 1997.

as "the eastern encroachment" (collectively the encroachments).[3] In its complaint, the UCBS alleged that defendants had encroached and trespassed on its property at these two locations. A survey prepared in 2018 by Marc N. Nyberg Associates, Inc., which was attached to plaintiff's complaint, depicted the two encroachments; and Mr. Nyberg stated in his affidavit filed in the Superior Court that the encroachments were situated solely on the UCBS's property.

On August 22, 2018, plaintiff filed a motion for a permanent injunction, asserting that its property was protected by virtue of G.L. 1956 § 34-7-9 and that defendants therefore had no sustainable claim to the property.[4] In response, defendants filed an objection to plaintiff's motion and also moved for leave to amend their answer so as to include a counterclaim for adverse possession. That motion having been granted, defendants proceeded to file their amended answer

---

[3]     The northern encroachment consists of 12,682 square feet, while the eastern encroachment consists of 12,131 square feet.

[4]     General Laws 1956 § 34-7-9 provides:

> "Any land held or preserved by a nonprofit corporation or nonprofit association for purposes of conservation, open space, or a cemetery is not subject to adverse possession or prescription."

The statute was enacted in 2008 and amended in 2012 so as to include cemeteries. *See* P.L. 2008, ch. 63, § 1; P.L. 2008, ch. 67, § 1; P.L. 2012, ch. 277, § 1; P.L. 2012, ch. 288, §1. For purposes of this opinion, we need not address this statute. *See* Part I.C.n.9, *infra*.

and counterclaim on November 13, 2018, asserting that they had title to the encroachments by virtue of the doctrine of adverse possession.

Pursuant to an order entered on May 28, 2019, plaintiff's above-referenced motion for a permanent injunction was consolidated with a trial on the merits. The order also directed the parties to file a stipulated statement of material facts with the court, and the parties did so on June 14, 2019. A bench trial took place on June 18, July 11, and July 22, 2019, with closing arguments taking place on September 19 of the same year. The trial justice rendered a bench decision on October 21, 2019. We relate below the salient aspects of what transpired at the trial.

## A

### The Testimony of Douglas Louis Keene

Douglas Louis Keene, who was president of the board of directors of the UCBS at the time of trial and had been on the board of directors of the UCBS since 2006, was the first witness to testify at trial. Mr. Keene stated that, in addition to being the president of the board of directors, he also conducted maintenance work on the UCBS property. He testified that some of his duties required him to be physically onsite, while some could be performed remotely. Mr. Keene stated that there were at least seven thousand gravesites located on the UCBS parcel, some dating back to the early 1800s. He added that the cemetery continued to accept new burials as well, but he also remarked that there were portions of the UCBS

- 4 -

parcel that were not suitable for graves. He noted that the UCBS held annual meetings in the Spring as well as other special meetings.

### 1. The Northern Encroachment

Mr. Keene testified that he had not gone to the encroachments during the first ten to fifteen years of his involvement with the cemetery. He stated that, in 2009, the then-president of the UCBS, Thomas Mellor, sent a letter regarding the northern encroachment to Mr. Foisy, requesting him to remove any items that were being stored on the UCBS property. He added that the board of directors opted to send that letter because a 2008 survey (also prepared by Mr. Nyberg) had revealed that some material was being stored on the UCBS's property on the northern encroachment.[5]

Mr. Keene further testified that, in 2008 or 2009, when the issue regarding the northern encroachment surfaced, he personally had gone to the northern encroachment and observed the storage there of what was essentially general scrap metal as well as vehicle chassis and some appliances. He added that he continued to go to the northern encroachment once a year "to see if there was further storage that might be encroaching further into cemetery property;" however, he reported seeing no changes in the occupation or use of that area.

---

[5] Mr. Keene stated that the Nyberg survey did not express any concerns about activities on the eastern encroachment. Mr. Keene added that he was unaware of any reference to the eastern encroachment by the UCBS board in 2009.

## 2. The Eastern Encroachment

As to the eastern encroachment, Mr. Keene testified that "until at least 2013," the board of directors did not have any discussions regarding that parcel because it "had no knowledge" of it. He stated that, over the years, he never saw farming, gardening, or planting activities on the eastern encroachment. Although Mr. Keene testified that, within the previous five to six years, he had noticed rocks being placed on the northern boundary of the eastern encroachment; he also stated that he had not seen any rocks or boulders on that portion before that time frame.

Mr. Keene testified that he only became aware that a chain-link fence had been installed on the eastern encroachment portion when Mr. Foisy showed "receipts" relating to the "2015/2016 time frame." He further testified that, while he had seen a wire fence on the eastern encroachment, he was not sure when it was installed. Mr. Keene testified that he did not remember seeing any fence on the eastern encroachment prior to 2015. He noted that any fences along the northern boundary of the eastern encroachment were not "quite as visible" from Williams Street. He also testified that the board of directors did not discover that defendants were using any portion of the eastern encroachment until 2013.

Mr. Keene testified that, prior to 2013 (but not before 2010), he noticed that the grass on a ten-to-twenty-foot portion of the eastern encroachment adjacent to defendants' property was being mowed. Mr. Keene added that in 2013 the portion

being mowed was expanding and that, before the expansion, the eastern encroachment appeared to be a piece of "fairly level ground" containing shrubs and trees. Mr. Keene further testified that, although he did not observe any items being stored on the eastern encroachment, he did observe Mr. Foisy cutting a fallen tree at some point in the 2009–2013 time frame. Mr. Keene asserted that he had never seen any "no trespassing signs or private property signs along the eastern encroachment [portion]."

### 3. The Cross-Examination of Mr. Keene

On cross-examination, Mr. Keene testified that he first made observations of the northern encroachment in 2008; stakes put in place by Mr. Nyberg confirmed Mr. Keene's suspicions about the encroachment in the northern portion. Mr. Keene acknowledged that fill could have been brought in to level the area and that, when he returned to plaintiff's property annually, he noticed a "variety of scrap metal," including auto parts and chassis, on the northern encroachment. He also indicated that he did not see a driveway or roadway accessing the northern encroachment from defendants' property; but he clarified that statement by adding that "as scrap metal would be moved around there would be obvious entry points." Mr. Keene also confirmed that the UCBS itself never stored any of its own material on the northern encroachment.

Mr. Keene testified that he was present on the northern encroachment when he accompanied Mr. Nyberg there at the time of the 2018 survey. Mr. Keene further testified that, over the course of a few years, he would conduct an "on-foot survey" of the northern encroachment "at least on four or five occasions." Moreover, Mr. Keene acknowledged that the UCBS did not take any action to remove items from the northern encroachment or post any signage until 2018; but he added that no further action was taken after the sending of the 2009 letter because the then-president of the board of directors, Mr. Mellor, was under the impression that a person could not "take cemetery property." He further acknowledged that the northern encroachment was exclusively defendants' and that their possession of it had been uninterrupted by any person or entity, including the UCBS.

As for the eastern encroachment, Mr. Keene stated that he became aware of it in 2013 when he began "noticing a difference in the density of the vegetation that indicated someone was clearing more land than had previously been cleared." He additionally stated that it was his belief that the tree-cutting, which he had previously described, did not occur before 2013. Mr. Keene testified that, after the 2009 letter was sent to defendants, he recalled Mr. and Mrs. Foisy driving to the UCBS property and Mr. Foisy declaring that he owned the encroachments through adverse possession. Mr. Keene conceded that, from 2009 until 2018, the

defendants' occupation of the encroachments was continuous and that plaintiff took no "external action" until this lawsuit was commenced.

**B**

**The Testimony of John Foisy**

The plaintiff next called Mr. Foisy to testify.[6]  He stated that, in 1995 and 1996, there was no one living in the house which was previously located on defendants' property and that, other than a particular wooden fence, he could not recall any other fencing on either of the encroachments.[7]  Mr. Foisy further testified that no one in his family had ever caused the encroachments to be surveyed.

**1. The Northern Encroachment**

Mr. Foisy confirmed that it was his understanding that, in 1981, his father was storing vehicles and scrap on the northern encroachment, although he also acknowledged that, over the years, the piles of scrap were not always continuously located in one identical place on the northern encroachment.  A letter by the Town sent to Mr. Foisy's father in 1981 was admitted into evidence.  Mr. Foisy testified that, until a month before his deposition in this case, he had not been aware that

---

[6]     Mr. Foisy would also testify in defendants' case as well. *See* Part I.B.3, *infra*.

[7]     Mr. Foisy testified that a new home was built on the property after the two lots were acquired from the UCBS in 1997.

that letter existed, and he also stated that his father had never discussed the contents of the letter with him. The 1981 letter indicated that Mr. Foisy's father was in violation of certain provisions of the North Smithfield Zoning Ordinance which implicated the storage of vehicles and scrap on the northern encroachment. Mr. Foisy also testified to receiving another notice of violation from the Town in 1997. He stated that, in response to this notice, he "moved [a] machine out of sight and just got rid of some scrap." A third notice of violation, dated May 11, 2000, was sent to Mr. Foisy concerning the parking and storage of certain vehicles; and Mr. Foisy admitted to removing those vehicles and reducing piles of scrap in response to the notice of violation.[8]

Mr. Foisy testified that, at one time, there was a gate on the northern encroachment, which was removed in the early 2000s. He indicated that he never posted a no-trespassing sign or any other type of sign on the encroachments, with the exception that there was signage on the gate which was removed in the 2000s. Mr. Foisy additionally acknowledged that he installed steel and telephone poles on the northern encroachment; he added that, prior to the installation of those poles, there were no poles or boundary markers there other than the previously stored items.

---

[8] All three notices of violation were admitted into evidence.

On cross-examination, Mr. Foisy testified concerning four photographs that had been introduced into evidence: (1) a photograph of his father standing in front of a scrap pile (Exhibit 24-1); (2) a photograph depicting the gate on the northern encroachment that was eventually removed (Exhibit 24-2); (3) a photograph of scrap cars (Exhibit 23-1); and (4) a photograph of Mr. Foisy's pickup truck (Exhibit 23-2).

### 2. The Eastern Encroachment

Turning to the eastern encroachment, Mr. Foisy testified that he never installed any buildings or structure there and that, since he was a child, the eastern encroachment was considered to be a "side lot," which "consisted of natural vegetation." Similarly, Mr. Foisy stated that he never stored any vehicles or scrap at any time on the eastern encroachment. He acknowledged that the chain-link and cattle fences were not installed on the eastern encroachment until approximately 2015 and 2016. Mr. Foisy added that he planted arborvitae along a portion of Williams Street in the early 2000s.

Mr. Foisy testified that, at some point in the early 2000s, he placed boulders on a portion of the eastern encroachment. A comparison of a 2014 aerial photograph with a 2011 aerial photograph (both admitted as full exhibits) indicated that rocks were not present in 2011. Mr. Foisy further indicated that he had removed no more than approximately three or four trees from that portion during

the time that he owned the property. He acknowledged that the only maintenance activities performed by defendants and their family on the eastern encroachment consisted of mowing, removal of trees, and occasional fertilizing.

When plaintiff rested, it moved for a judgment on partial findings pursuant to Rule 52(c) of the Superior Court Rules of Civil Procedure, arguing that defendants had not satisfied by clear and convincing evidence all the elements required for adverse possession. The defendants maintained that the motion was premature as they had not yet had the opportunity to present their case-in-chief; the trial justice agreed with defendants and declined to rule on the Rule 52(c) motion at that juncture.

### 3. The Defendants' Case-in-Chief

Mr. Foisy, who had already testified in plaintiff's case, was also called to testify in defendants' case-in-chief. He testified that he began "scrapping" when he was a ten-year-old and that he had engaged in that activity on the northern encroachment continuously throughout his whole life. He also indicated that the eastern encroachment was not used by anyone else during his lifetime because it was generally known as his family's property in view of the fact that they "always took care of it." Similarly, Mr. Foisy testified that the northern encroachment portion was not shared with any of his "colleagues or any other business."

Mr. Foisy said that it was his understanding that the Town assumed that the property was defendants' property when it issued notices of zoning code violations. He also testified that some of the northern encroachment was visible from Williams Street. Mr. Foisy admitted that, because the northern encroachment was visible from Williams Street, he installed the gate to camouflage or conceal the activity taking place on that encroachment portion.

On cross-examination, Mr. Foisy corrected his previous statement and said that he was not trying to camouflage the northern encroachment from the Town by way of the gate; rather, he stated the gate was an attempt to "make it look better." He further testified that the no-trespassing signs on the gate were not placed there in order to indicate that that was where his property ended.

## C

### The Trial Justice's Decision

The trial justice rendered a bench decision on October 21, 2019. She first addressed the issue of whether § 34-7-9 bars defendants' adverse possession claim against the UCBS. The trial justice rejected plaintiff's argument to the effect that, because defendants failed to assert their claim prior to the statute's enactment or amendment, their adverse possession claim is barred. She reasoned that a party

may tack on the period of possession of the predecessor in title and that, once the statutory period has run, title vests automatically in the adverse possessor.[9]

The trial justice next addressed the ultimate issue—namely, whether defendants had satisfied their burden of showing that they and/or their predecessors had an actual, open, notorious, hostile, continuous, and exclusive use of the disputed portions under a claim of right for a ten-year period prior to 2012. She determined that defendants ultimately failed to meet their burden of establishing these elements by clear and convincing evidence. Beginning with the northern encroachment, the trial justice found that the testimony as to the open and notorious use of the portion was "contradictory and insufficient" to establish that defendants' use of that portion for storing scrap metal and vehicles "place[d] the world on constructive notice." The trial justice noted that Mr. Foisy attempted to support his testimony regarding the storage of scrap and vehicles through Exhibit 23-1 and Exhibit 23-2.[10] She continued that Mr. Foisy did not identify when the

---

[9] The defendants have challenged on appeal only the trial justice's ruling with respect to the open and notorious requirements, and plaintiff has not filed a cross-appeal with respect to the trial justice's ruling on the § 34-7-9 issue. Accordingly, we confine our analysis only to the open and notorious issue. *See* Article I, Rule 3(c) of the Supreme Court Rules of Appellate Procedure ("The notice of appeal shall specify the party or parties taking the appeal and shall designate the judgment, order, or decree or part thereof appealed from.").

[10] *See* Part I.B.1, *supra*.

photographs were taken, and she additionally found his testimony that they were representative of the storage on the northern encroachment not to be convincing.

Similarly, the trial justice emphasized that the undated photographs which constituted Exhibit 24-1 and Exhibit 24-2[11] were unconvincing because Mr. Foisy did not testify as to when those photographs were taken and did not explain their orientation or describe the location of the scrap pile in relation to the boundary between defendants' parcel and the northern encroachment. She found the photographic evidence "confusing" and stated that it contradicted Mr. Foisy's testimony that he did not place scrap on any other part of the parcel. Moreover, she noted that there was no other testimony regarding "any purported depictions of the northern encroachment."

Regarding the letter sent by the Town to Mr. Foisy's father concerning the alleged violations of the zoning ordinance in 1981, the trial justice pointed out that Mr. Foisy testified that his father never discussed "any of the issues raised" in the violations. She addressed Mr. Foisy's testimony that he moved equipment, vehicles, and scrap after he received the notices of violation in 1997 and 2000. However, she went on to say that there was no testimony or evidence to indicate that the northern encroachment "is of such character as to preclude such continuous occupation;" she added that there was no testimony or evidence to

---

[11]     *See* Part I.B.1, *supra*.

indicate whether the intermittent use of that parcel by defendants and their family "for storage of scrap metal and vehicles is similar to how other scrap businesses ordinarily use their land." Lastly, the trial justice found that Mr. Foisy's testimony as to whether the gate was installed to conceal the use of the northern encroachment was contradictory. Accordingly, the trial justice determined that defendants had not met their burden of showing actual, continuous, open, and notorious use of the northern encroachment for a ten-year period prior to 2012. In view of that ruling, the trial justice determined that there was no need to address the issue of whether there had been evidence of hostile and exclusive use under a claim of right.

As to the eastern encroachment, the trial justice found that defendants' proof of use and possession "dat[ing] to Mr. Foisy's childhood consists of his vague, uncorroborated personal recollections." She acknowledged that, for the period between 1996 and 2012, defendants attempted to corroborate Mr. Foisy's testimony regarding use of the eastern encroachment with photographic evidence and a seven-minute video from 1996. The trial justice emphasized that the "only" maintenance activities on that portion were "grass mowing, the removal of three or four dead trees, and occasional fertilizing."

The trial justice acknowledged other testimony, including Mr. Foisy's statements about poles being in place for a year or two beginning in 2004, but she

also noted the lack of corroborating photographic evidence. She further considered Mr. Foisy's testimony that he planted arborvitae along Williams Street, but she pointed out that he did not testify as to when the photographs depicting the same were taken or if they indicated a specific time frame. As with the arborvitae, the trial justice acknowledged Mr. Foisy's testimony that he placed boulders at some time in the early 2000s, but she again noted that Mr. Foisy did not indicate when the photograph was taken or if it depicts a particular point in time. She acknowledged that Mr. Keene testified that the UCBS did not place the boulders on the northern boundary of the eastern encroachment and did not know how long they had been there.

Finally, the trial justice stated that Mr. Keene observed rocks on the northern boundary of the eastern encroachment within the preceding five or six years, which he identified in an aerial photo from 2014, but she noted that those rocks were not visible in an aerial photo from 2011. She determined that there was "no clear evidence of significant landscaping or obvious improvements on the eastern encroachment [portion] for a ten-year period prior to 2012." As with the northern encroachment, the trial justice found that defendants did not meet their burden of showing actual, continuous, open, and notorious use of the northern encroachment for a ten-year period prior to 2012.

The trial justice ultimately ruled that plaintiff was entitled to the declaratory relief requested as well as a permanent injunction restraining and enjoining defendants from further trespass. Final judgment entered to that effect and against defendants on their counterclaim and their request for declaratory and injunctive relief. The defendants were ordered to permanently remove any structures, objects, and materials that were on the encroachments. A consent order was entered on March 4, 2020, with a limited stay applying "only to the boulders, arborvitae, and metal poles located on the [e]astern [e]ncroachment [portion], as such [portion] is defined and delineated in the [c]ourt's [f]inal [j]udgment and [o]rder entered on November 15, 2019."

## II

### Standard of Review

This Court "will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence." *Clark v. Buttonwoods Beach Association*, 226 A.3d 683, 690 (R.I. 2020) (quoting *Quillen v. Macera*, 160 A.3d 1006, 1010 (R.I. 2017)); *see Athena Providence Place v. Pare*, 262 A.3d 679, 684 (R.I. 2021) (holding that the trial justice's conclusion was clearly erroneous and grounds for reversal); *Andrews v. Lombardi*, 233 A.3d 1027, 1039 (R.I. 2020) (holding that the trial court committed reversible error due to its clearly erroneous

misconception of evidence upon which the findings were based); *Newport Realty, Inc. v. Lynch*, 878 A.2d 1021, 1035 (R.I. 2005) (stating that the trial justice erroneously overlooked evidence concerning public use, thereby necessitating reversal).  Questions of law, by contrast, are reviewed *de novo*. *Clark*, 226 A.3d at 690.

### III

### Analysis

A party may acquire land pursuant to the doctrine of adverse possession "when the elements identified in the General Assembly's codification of this method of acquisition are met." *Clark*, 226 A.3d at 690.  Section 34-7-1 provides:

> "Where any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action."

In order to obtain title by adverse possession, "a claimant must prove actual, open, notorious, hostile, continuous, and exclusive use of [the] property under a claim of right for at least a period of ten years." *Clark*, 226 A.3d at 690 (quoting *DiPippo v. Sperling*, 63 A.3d 503, 508 (R.I. 2013)). The party asserting title by adverse possession "must establish the required elements by strict proof, that is, proof by clear and convincing evidence." *Id.* at 690-91 (quoting *DiPippo*, 63 A.3d at 508). We have further stated that "upon ten years of uninterrupted, quiet, peaceful and actual seisin and possession of the land, good and rightful title vests immediately in the adverse claimant." *Id.* at 691 (brackets omitted) (quoting *Carnevale v. Dupee*, 783 A.2d 404, 412 (R.I. 2001)).

This Court, considering the open and notorious elements together, "inquires 'whether the party claiming ownership by adverse possession used the property in a manner consistent with how owners of similar property would use such land and whether these uses were inclined to attract attention sufficient to place the world on constructive notice.'" *Clark*, 226 A.3d at 691 (brackets omitted) (quoting *Caluori v. Dexter Credit Union*, 79 A.3d 823, 830 (R.I. 2013)). We have stated that "no particular act to establish an intention to claim ownership is required to give notice to the world of the claim" and that "it is sufficient for the claimant to go upon the disputed land and use it adversely to the true owner." *Id*. (quoting *McGarry v. Coletti*, 33 A.3d 140, 145 (R.I. 2011)). A claimant must show "objective

trespassory acts that are adverse to the rights of the true owner, not acts that are inconsistent to the use of the true owner." *Caluori*, 79 A.3d at 829 (quoting *Butterfly Realty v. James Romanella & Sons, Inc.*, 45 A.3d 584, 590 (R.I. 2012)). Moreover, "[i]t is sufficient if one goes upon the land openly and uses it adversely to the true owner, the owner being chargeable with knowledge of what is done openly on his land." *Id.* (quoting *Stone v. Green Hill Civic Association, Inc.*, 786 A.2d 387, 391 (R.I. 2001)).

On appeal, defendants argue that the trial justice misapplied the open and notorious criteria that apply to adverse possession cases. Specifically, defendants take issue with the following findings by the trial justice:

> "[T]here was no testimony or evidence to indicate that the northern encroachment [portion] is of such character as to preclude such continuous occupation, and no testimony or evidence to indicate whether the Foisys' intermittent use of the northern encroachment [portion] for storage of scrap metal and vehicles is similar to how other scrap businesses ordinarily use their land." (Internal quotations marks omitted.)

The plaintiff counters defendants' argument by pointing to the reasoning on various cases decided by this Court, most notably *McGarry v. Coletti*, 33 A.3d 140 (R.I. 2011).

Regarding the notorious element, defendants point to the evidence that the Town had sent the notices of violation concerning the presence of scrap metal *to defendants*, *rather than to the UCBS*. They further point to the fact that storage of

scrap metal on the northern encroachment had been continuous throughout Mr. Foisy's whole life—testimony which Mr. Keene corroborated when he testified to having personally observed the storage of scrap metal, chassis, and appliances and when he noted that he did not observe any changes in the use of that portion over the years.

The plaintiff contends that, while Mr. Foisy testified that he and his family had conducted certain scrap and storage activities on the northern encroachment prior to 2012, the portions used for that purpose were never clearly defined and the storage of scrap, auto parts, vehicles, trailers, and sheds changed in location and size over time. Phrasing its argument a bit differently, plaintiff emphasizes that defendants have failed to demonstrate "a clearly defined [portion] having been continuously possessed." The plaintiff also notes that there is "a steep grade and dense foliage" between the northern encroachment and a portion of plaintiff's parcel where burials currently take place, and it contends that said grade and foliage concealed defendants' activities from view.

Regarding the eastern encroachment, defendants take issue with the trial justice's resting her ruling on the fact that the "only" maintenance activities which defendants conducted on that portion were grass mowing, tree removal, and occasional fertilizing. The defendants emphasize that our holding in *Acampora v. Pearson*, 899 A.2d 459 (R.I. 2006), is definitely consistent with their contention

that defendants' activities could support a finding of adverse possession of the eastern encroachment. The plaintiff maintains that defendants' minimal activities on the eastern encroachment do not satisfy the open and notorious elements of an adverse possession claim. More broadly, plaintiff claims that defendants failed to clearly and convincingly satisfy the elements for adverse possession.

## A

## The Northern Encroachment

We begin by addressing defendants' arguments pertaining to the northern encroachment. First, we are convinced that defendants have satisfied the requirement that the property must be used in "a manner consistent with how other owners of [similar property] typically would use such land, and whether these uses took place in a manner calculated to attract attention, thus placing the world on constructive notice of [their] adverse claim." *Tavares v. Beck*, 814 A.2d 346, 354 (R.I. 2003) (internal quotation marks omitted). Notably, Mr. Foisy testified about three separate notices of violation having been sent to Mr. Foisy or his father by the Town (in 1981, 1997, and 2000) regarding scrap materials on the northern encroachment. The sending of these notices to defendants logically supports the conclusion that the use by defendants and Mr. Foisy's father of the northern encroachment was of such an open and notorious nature that it garnered the interest of Town officials. One of the notices of violation stated that defendants had

- 23 -

violated a zoning ordinance by their *open* storage of machinery, automotive equipment, and junk material as well as by the parking of vehicles. In our judgment, these several notices constitute clear and convincing evidence that the world was put on notice of defendants' open and notorious use of the northern encroachment.

Additionally, there was undisputed evidence introduced at trial that some neighboring properties were used for commercial purposes. And we are unable to agree with the trial justice's view that the absence of evidence to suggest that other owners were using their land specifically for scrap metal and vehicle storage was somehow consequential; we are aware of no requirement in this jurisdiction that there be that degree of similarity in the use of the land.

Moreover, Mr. Foisy provided uncontradicted testimony that he continuously used the northern encroachment for the storage of scrap materials and vehicles, and it is undisputed that he continued such activities on the northern encroachment even after receipt of the Town's several notices of violation. Mr. Foisy's testimony established that the storage of scrap metal on the northern encroachment had been continuous throughout his life. Mr. Keene's testimony not only further corroborated the fact that the use of the northern encroachment was continuous, but it also supported defendants' contention that their use was open and notorious. Mr. Keene testified that he observed the storage of scrap metal,

vehicle chassis, and appliances on the northern encroachment beginning in 2008 or 2009. He also stated that he continued to go to the northern encroachment once a year and reported seeing no changes in the manner in which that parcel was occupied or used. We conclude that the testimony of both Mr. Foisy and Mr. Keene constitutes clear and convincing evidence that the use by defendants and their predecessor in title of the northern encroachment more than adequately satisfied the open and notorious criteria.

We would further note that plaintiff's emphatic reliance on *McGarry v. Coletti*, 33 A.3d 140 (R.I. 2011), is misplaced. This Court in *McGarry* held that the facts regarding the defendant's activities in that case differed significantly from those at issue in *Acampora v. Pearson*, 899 A.2d 459 (R.I. 2006). *McGarry*, 33 A.3d at 146. We specifically pointed out that the defendant in *McGarry* did not maintain a lawn nor did he erect any structure on the disputed parcel. *Id.* We noted that the defendant had only laid crushed stone on two occasions, which we viewed as being "a more limited action than installing, and regularly mowing, a lawn." *Id.* In the instant case, by contrast, there was a significant amount of activity taking place on the northern encroachment—far beyond that of the laying of crushed stone and the mowing of a lawn. As such, it is our opinion, based on our close review of the entire record, that the trial justice committed reversible error in

finding that defendants failed to meet their burden of showing actual, continuous, open, and notorious use of the northern encroachment.

Furthermore, we are unpersuaded by plaintiff's argument that the encroachments were not clearly defined and that the storage of materials changed in both location and size. It is very significant that the parties in the Superior Court jointly filed a statement of uncontested facts, in which both parties expressly defined and agreed to the boundaries of the encroachments. It is clearly stated therein that the parties intended the disputed portion of 12,682 square feet to be known as the northern encroachment and the portion of 12,131 square feet to be known as the eastern encroachment—both having been depicted in the 2018 Nyberg survey, which was introduced at trial as a joint exhibit. As a result, plaintiff is not free at this juncture to contend that the encroachments were not adequately established.

**B**

**The Eastern Encroachment**

Turning next to the eastern encroachment, we are similarly of the opinion that the trial justice accorded insignificant weight to vitally important evidence in the record and then failed to consider that evidence in light of controlling caselaw from this jurisdiction. In *Acampora*, this Court held that the plaintiffs' use of the property which they alleged that they had adversely possessed was indeed both

open and notorious. *Acampora*, 899 A.2d at 467. We reasoned that the plaintiffs "used the disputed property, which [was] essentially a side yard, as any owner of this residential land would—they cut the lawn, maintained the property, and used it for outdoor activities." *Id.*; *see also Anthony v. Searle*, 681 A.2d 892, 898 (R.I. 1996) (affirming the trial justice's finding that a landowner satisfied the elements of adverse possession when he "plant[ed] trees, maintain[ed] a lawn over the disputed [portion] and ma[de] other improvements including the erection of a rabbit hutch and two cold frames").

It follows that Mr. Foisy's unrebutted testimony regarding the mowing, occasional fertilizing, and the cutting of trees constituted clear and convincing evidence to establish the open and notorious elements of an adverse possession claim. Moreover, Mr. Foisy provided testimony that he had planted some vegetation along Williams Street in the early 2000s and that, also at some point in the early 2000s, he had placed boulders on a portion of the eastern encroachment to create a northern boundary. Mr. Foisy further testified that his family had used both encroachments for decades, which testimony was unrebutted. We therefore conclude, taking into account the controlling criteria in this jurisdiction, that defendants established by clear and convincing evidence that their use and possession of the eastern encroachment was more than sufficiently open and notorious. *See Acampora*, 899 A.2d at 467; *Carnevale*, 853 A.2d at 1201 (stating

- 27 -

that the defendant's "maintenance of fencing and frequent mowing were consistent with how an owner of land would use and maintain a parcel of rural land").

Based upon our review of the evidence presented at trial, much of which was uncontested and uncontradicted, it is our view that the trial justice overlooked or misconstrued material evidence and failed to take into account relevant, instructive caselaw. For these reasons, it is our opinion that the trial justice erred in deciding that the defendants failed to satisfy, by clear and convincing evidence, the open and notorious elements of their adverse possession claim.

## IV

## Conclusion

For the reasons set forth in this opinion, we vacate the judgment in this case and remand the record to the Superior Court for such further proceedings concerning the hostile and exclusive elements of the defendants' adverse possession claim as may be necessary.

Justice Long did not participate.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | The Union Cemetery Burial Society of North Smithfield v. John D. Foisy et al. |
| **Case Number** | No. 2020-182-Appeal. (PC 18-2419) |
| **Date Opinion Filed** | May 10, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa A. Long |
| **Attorney(s) on Appeal** | For Plaintiff: Michael Louis Mineau, Esq. |
| | For Defendants: Ryanna T. Capalbo, Esq. |