**Supreme Court**

No. 2012-14-Appeal.
(KC 09-968)

Joyce DiPippo, Individually and as Trustee   :
of the Joyce DiPippo Living Trust dated
June 10, 1992 et al.

v.              :

Louis Sperling et al.        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Joyce DiPippo, Individually and as Trustee   :
  of the Joyce DiPippo Living Trust dated
      June 10, 1992 et al.

               v.                 :

    Louis Sperling et al.           :

    Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.


**O P I N I O N**

**Chief Justice Suttell, for the Court.** Joyce DiPippo (Mrs. DiPippo) and Trudy DiPippo

(collectively, plaintiffs)[1] appeal from a Superior Court judgment, after a bench trial, in favor of

the defendants, Louis and Rebecca Sperling, in this adverse-possession action. The plaintiffs

argue that the trial justice erred in holding that an agreement, in which the Sperlings granted Mrs.

DiPippo permission to place a hammock on a disputed parcel of land, was a concession to the

defendants' superior title in that land. This case came before the Supreme Court pursuant to an

order directing the parties to show cause why the issues raised in this appeal should not

summarily be decided. After considering the parties' written and oral submissions and reviewing

the record, we conclude that cause has not been shown and that this case may be decided without

further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of

the Superior Court.

---

[1] Although the case caption reads "Joyce DiPippo, Individually and as Trustee * * *," the original
complaint was amended to include Joyce DiPippo's daughter, Trudy DiPippo, as an additional
plaintiff.

# I

## Facts and Procedural History

The plaintiffs own property at 90 Overhill Road in Warwick, Rhode Island, which is described as Assessor's Plat No. 219, lot No. 9. Joyce DiPippo purchased the property with her then-husband, Robert, in 1972.[2] In 2002, defendants purchased property at 86 D'Agnillo Drive in Warwick, Rhode Island, which is described as Assessor's Plat No. 219, lot No. 172. The defendants' property abuts the southern boundary of plaintiffs' property. The parcel of land at issue is an area, irregular in both shape and contour, located on the northernmost portion of defendants' surveyed property.[3] The precise boundaries of the disputed area have not been determined. The plaintiffs assert that, since 1972, they have used this area as their own, in the belief that it is part of their yard. Specifically, plaintiffs placed an inflatable children's pool, built a "tree fort," and hung a hammock from trees in the disputed area.

In March 2003, after purchasing the property on D'Agnillo Drive, defendants arranged to have their property surveyed and staked. One of the stakes denoting the northern border of the Sperling property was placed within the disputed area. Mrs. DiPippo's son, Alexander, testified that he removed the stake, stating that he thought it had been placed "in the middle of my yard." Mr. Sperling testified that he spoke to Mrs. DiPippo for the first time on or about March 14,

---

[2] Joyce and Robert DiPippo owned the property until their divorce. Mrs. DiPippo became the sole owner in 1986. In 2000, she transferred the property to herself as trustee of a revocable trust. In 2008, she conveyed the property to Trudy DiPippo, reserving a life estate for herself.

[3] Although plaintiffs consistently use the term "the cleared area" in their filings, defendants assert that the area is not cleared and remains woodland. The photographs offered as exhibits show trees and brush consistent with a natural woodland. While there was discussion during the trial about taking a view of the property, the record does not reveal whether the court took such a view. Accordingly, on such limited information, this Court will decline to use the term "cleared area" and will instead refer to it only as the "disputed area."

2003. He said that Mrs. DiPippo inquired about the surveyor's stake and asked if Mr. Sperling intended to erect a fence across the rear of the property. Mr. Sperling recalled responding that he did not intend to do so, and asked why that would be a concern. He testified that Mrs. DiPippo replied that she had placed her hammock there and that the prior owner "had told her it was okay." Mr. Sperling further testified that "she wanted to know if I would let her do it."

Mrs. DiPippo also testified about meeting Mr. Sperling for the first time "a couple of days after [her] son broke off the stake." She recalled Mr. Sperling telling her that he was now the owner of the land and testified that she "probably stood there with [her] mouth open." When asked whether she told Mr. Sperling what she believed the status of the land to be, Mrs. DiPippo testified that she told him: "I have no idea what you're talking about. I totally have to process this. This is news to me." Although she did not testify to making any claim of ownership during that conversation, she recalled feeling "like someone * * * told you after 35 years it's not yours. It's just too much to process, too much to absorb and I couldn't absorb it at that point."

Mr. Sperling testified that he told Mrs. DiPippo that he would allow her to hang the hammock and then, at a subsequent meeting, stated that he would give permission in exchange for her executing an indemnification agreement. The indemnification was not executed until 2005, and during the interim, Mrs. DiPippo did not hang her hammock in the disputed area.

In January 2004, defendants sent a letter to several neighbors along their northern border, including Mrs. DiPippo. The letter referred to a stone wall at the rear edge of the property, that "marks the property line" between defendants and the neighboring lots to the north, and noted that "part of [the defendants'] property may have been used by a neighbor not being aware that the property line stops at the stone wall. This may particularly be the case where the stone wall

- 3 -

has disappeared."[4]  In the letter, defendants also stated that they would not permit further use of their property without "specific written permission," but they offered to consider requests for such permission.  Additionally, the letter advised that defendants intended to file a notice to contest adverse possession.  On March 31, 2004, defendants recorded said notice in the Warwick Records of Land Evidence.

On April 13, 2004, Mrs. DiPippo sent a letter to defendants asserting that she had "always believed that [she] own[ed] the property in dispute."  Mrs. DiPippo proposed meeting to "discuss ways that the case can be resolved," and noted that any such meeting "would be considered a settlement discussion pursuant to Rule 408 [of the Rhode Island Rules of Evidence]."  Although the parties met, no settlement was reached.

In the spring of 2005, there was further discussion about Mrs. DiPippo putting up the hammock, and Mr. Sperling reminded her that he would need an indemnification agreement.  When Mrs. DiPippo realized that defendants had not received one from her attorney, she invited Mr. Sperling to draft an agreement.  Finally, on April 22, 2005, Mrs. DiPippo signed an indemnification agreement that Mr. Sperling had drafted.  The document states as follows:

> "This letter will serve to confirm our understanding regarding our permission for you to put up and use a hammock amongst trees on our property.
>
> "On Tuesday, April 19, 2005, you indicated to me that you had informed your attorney to present us with your acknowledgement that we had given you permission to place a hammock on a portion of our property which abuts your adjoining property in exchange for your agreement to indemnify us for any injury which may occur to you or your guests from the use of the hammock placed on our property.  I indicated to you that I had not received any such notification from your attorney.  I further indicated to you that you

---

[4] The stone wall referenced in the letter runs along the southern boundary of four rectangular lots north of defendants' property, but there is a gap in the wall behind plaintiffs' property.

could place the hammock on our property pending acceptable notification from you or your attorney regarding indemnification.

"This letter will serve as notification of our intent to grant you limited access and use of a portion of our property for the purpose of placing and using a hammock on our property in exchange for your signed indemnification as noted below.

"You also indicated to me a desire to obtain permission for your son to place a hammock on our property should you decide to sell your property to him in the future. Our willingness to grant permission to your son should he become the owner of the property will be dependent on his willingness to indemnify us at the time he becomes an owner of the property and his agreement to the terms of usage as outlined in this letter.

"Of course, circumstances may change and you may, in the future, not wish to provide us with indemnification. Therefore, it is understood and agreed that either party may terminate this agreement at any time and for any reason upon written notice to the other party. Should you withdraw your indemnification or should you use the property for any purpose or reason other than the placement and use of a hammock, permission to use our property will be immediately withdrawn. It is understood that you cannot cut any trees or shrubs that are on our property nor may you place any other structure or object on our property other than the said hammock.

"It is further understood and agreed that you will indemnify us and hold us harmless for any injury which you or your guests may sustain while using the hammock on our property.

"By signing and returning a copy of this letter to me, we can avoid any further discussion of the matter and avoid additional and unnecessary attorney fees. Enjoy your summer and happy swinging."

Mrs. DiPippo returned the signed letter to defendants along with a handwritten note stating: "What a perfect solution!! I'm happy to sign the agreement * * * I feel good about resolving this, as I'm sure you do. Looking forward to waving hello at you, while swinging in my hammock!!" Neither document contains a reservation of rights, or any mention of plaintiffs' claim to the property.

- 5 -

In the fall of 2005, Mrs. DiPippo alerted defendants that one of the trees to which she affixed her hammock was leaning at a 45-degree angle. In a handwritten letter dated November 17, 2005, Mrs. DiPippo offered to pay $100 toward removal of the tree, "even though I've since learned that I have no responsibility to do so." On June 11, 2006, Mrs. DiPippo again wrote to defendants, expressing increasing concern about "the huge tree in your yard that is now perched very precariously on my tree" and the fear that her tree could collapse onto the roof of her house. Mr. Sperling responded in a letter dated June 13, 2006, noting that the "branches and the like which hang over your property are subject to being cut and trimmed by you." The letter describes the property line stating, "[i]f you stand where the stone wall used to be and look up, you can see a bulge in the tree. Everything to the left of the bulge is over your property * * *." Finally, the letter states that if, after the overhanging branches are trimmed, the trunk still looks unsteady, defendants "will, of course, deal with that expense."

In December 2006, Mrs. DiPippo left Mr. Sperling a voicemail message informing him that she had found someone to cut the branches on her property. In his response, Mr. Sperling reiterated that Mrs. DiPippo was not authorized to remove any part of the tree trunk that remained on his property. The tree, which previously had held up one side of Mrs. DiPippo's hammock, fell over in early 2007. Mrs. DiPippo arranged to have the fallen tree removed, prompting defendants to send a letter directing her to cease cutting "wood that is not yours to cut" and reiterating that "you cannot enter the property, cut trees, remove shrubs or even rake leaves without explicit permission." Mrs. DiPippo complied.

In 2008, Mrs. DiPippo installed security lights on her property that shone toward defendants' house. That November, defendants erected a fence approximately five and a half feet inside the northern boundary of their own property. The plaintiffs filed the instant action for

adverse possession on July 10, 2009, and moved for a preliminary injunction. The motion for preliminary injunction was heard on August 26, 2009, and the hearing justice found that plaintiffs failed to establish either a reasonable likelihood of success on the merits or irreparable harm and thus he denied the motion. The case proceeded to a bench trial and was heard on December 6-8, 2010.[5] On July 14, 2011, judgment entered in favor of defendants. The plaintiffs timely appealed.

## II

## Standard of Review

This Court will "give much deference 'to the factual findings of a trial justice sitting without a jury in a civil case.'" McGarry v. Coletti, 33 A.3d 140, 144 (R.I. 2011) (quoting B.S. International Ltd. v. JMAM, LLC, 13 A.3d 1057, 1062 (R.I. 2011)). We have stated that "we will not disturb such findings 'unless [they] are clearly wrong or the trial justice misconceived or overlooked material evidence.'" Id. (quoting Lee v. Raymond, 456 A.2d 1179, 1184 (R.I. 1983)). "[T]his standard applies in adverse possession cases." Id. (quoting Carnevale v. Dupee, 853 A.2d 1197, 1200 (R.I. 2004)).

## III

## Discussion

On appeal, plaintiffs argue that the trial justice erred in applying this Court's precedent in Cahill v. Morrow, 11 A.3d 82 (R.I. 2011), when he found that the 2005 agreement between the parties allowing Mrs. DiPippo to put up a hammock was an acknowledgment by plaintiffs of defendants' superior title. Specifically, plaintiffs argue that the indemnification letter was a settlement agreement entered into after a dispute had arisen and thus cannot serve as evidence

---

[5] The Superior Court justice who presided at the trial was not the same justice who heard the motion for preliminary injunction.

that plaintiffs conceded defendants' ownership of the disputed area. The defendants respond that Mrs. DiPippo asked Mr. Sperling for permission to put up her hammock in 2003, well before defendants' notice of intent to dispute adverse possession. The defendants argue that, because this request was made prior to any dispute, it cannot be construed to be a settlement. Further, defendants note that Mrs. DiPippo did not reserve any rights to maintain an adverse-possession claim when she signed the 2005 agreement. Accordingly, defendants assert that the trial justice was correct in holding that plaintiffs did not possess the disputed property under a claim of right. Alternatively, defendants argue that the most plaintiffs can claim is a seasonal easement to use a hammock in the disputed area—an easement that was extinguished when one of the "hammock trees" fell.

In Rhode Island, to obtain property by adverse possession,[6] a claimant must prove "actual, open, notorious, hostile, continuous, and exclusive use of property under a claim of right for at least a period of ten years." Cahill, 11 A.3d at 88. "The party who asserts that adverse possession has occurred must establish the required elements by strict proof, that is, proof by

---

[6] General Laws 1956 § 34-7-1 states,

> "Where any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action."

clear and convincing evidence." Id. (quoting Corrigan v. Nanian, 950 A.2d 1179, 1179 (R.I. 2008) (mem.)).

The trial justice made specific findings that plaintiffs' use of the disputed property was actual and continuous, open and notorious, and exclusive throughout the ten-year statutory period. At issue here is the element of hostility. "[T]o require adverse possession under a claim of right is the same as requiring hostility, in that both terms simply indicate that the claimant is holding the property with an intent that is adverse to the interests of the true owner." Tavares v. Beck, 814 A.2d 346, 351 (R.I. 2003) (quoting 16 Richard R. Powell and Michael Allan Wolf Powell on Real Property, § 91.05[4] at 91-29 (2000)). A possessor's use is hostile if it is "a use 'inconsistent with the right of the owner, without permission asked or given, * * * such as would entitle the owner to a cause of action against the intruder [for trespass].'" Id. (quoting Powell on Real Property, § 91.05[1] at 91-23). The trial justice found that plaintiffs failed to prove their use was hostile because they made "several arrangements with [defendants] that illustrated [their] acceptance of [d]efendants' superior title." Accordingly, he found that Mrs. DiPippo was "well aware that her interest in the disputed property was subservient to that of the [d]efendants." Although the trial justice made few specific findings of fact, in making this determination it is apparent that he relied on testimony about discussions in which Mrs. DiPippo requested permission to place a hammock on the disputed property, as well as the 2005 indemnification agreement. We shall address each of these bases separately.

**A**

**The 2003 Discussion**

In Cahill, 11 A.3d at 93, this Court held that "the objective manifestations that another has superior title, made after the statutory period and not made to settle an ongoing dispute, are

- 9 -

poignantly relevant to the ultimate determination of claim of right and hostile possession during the statutory period." Here, the trial justice found that "[p]laintiff made several arrangements with the owners of the property neighboring hers that illustrated her acceptance of [d]efendants' superior title." Because the trial justice found that plaintiffs' acts of actual and continuous possession related to the tree fort, inflatable swimming pool, and children's play in the disputed area—acts which occurred decades before defendants purchased the property, it is clear that the "arrangements" between plaintiffs and defendants were made after the ten-year statutory period had run. See G.L. 1956 § 34-7-1.

The plaintiffs argue that the "arrangements" were made to settle an ongoing dispute, and thus cannot be considered in determining whether Mrs. DiPippo's possession was under claim of right. To support this argument, plaintiffs aver that defendants' January 10, 2004 letter advising that they would file a notice to contest adverse possession marks the beginning of the ongoing dispute. Accordingly, they assert that the signed agreement between the parties, dated April 22, 2005, is not an objective manifestation of defendants' superior title, but rather, is an attempt to settle an ongoing dispute.

It is clear, however, that the trial justice did not base his decision solely on the 2005 agreement. The trial justice also found "that there are declarations by [p]laintiff[s] of [d]efendants' superior title. When the Sperlings became the owners of the property [Mrs. DiPippo] asked for permission to anchor the hammock in the disputed area. Defendants allowed her to do so, conditioned on an indemnification agreement * * *." While the indemnification agreement is dated 2005, both Mrs. DiPippo and Mr. Sperling testified to having a conversation in 2003, although their testimony regarding the content of the 2003 discussion differs. After carefully reviewing the trial justice's decision, we are satisfied that he was not clearly wrong in

finding that Mrs. DiPippo "acknowledged that someone else had superior title over the disputed property by asking for permission" to use the area shortly after the Sperlings purchased the property.

**B**

**The 2005 Agreement**

Even assuming, <u>arguendo</u>, that the trial justice relied solely on the post-dispute 2005 indemnification agreement, we remain unconvinced that this agreement represents an attempt to settle the ongoing dispute over ownership of the property. The plaintiffs characterize the agreement as one "whereby [Mrs. DiPippo] agreed to treat the disputed property as [defendants'], not hers, provided the Sperlings allowed her to place her hammock on the disputed property, and provided further that she indemnify them for any claims." The assertion that Mrs. DiPippo "agreed to treat the disputed property" as the Sperlings' is plainly not reflected in the indemnification agreement.

The agreement contains no fewer than eleven references by defendants to the disputed area as "our property"; two of those references serve to distinguish the disputed area from "your property." Further, the statement that Mrs. DiPippo signed at the bottom of that correspondence reads:

> "I, Joyce DiPippo, hereby agree to the terms set forth in this letter and acknowledge that I have obtained the permission of Louis and Rebecca Sperling to place and use a hammock on their property. I further agree to indemnify them and hold them harmless for any injury which may occur to myself or to my guests while using the hammock on their property."

At no point in the document is there any reference to plaintiffs having any claim to the disputed area or to their agreeing to "treat the disputed property" as belonging to defendants. The letter

- 11 -

contains no reservation of rights; and, importantly, plaintiffs do not promise not to file a claim in exchange for permission to use the property.

The plaintiffs also state that they entered the agreement "hoping that it would bring peace and closure to the boundary dispute." There is, however, no mention of any such dispute within the document. Absent a promise to refrain from litigation over the disputed area, we fail to see how this letter could operate to resolve the dispute over the property. Rather, we read the agreement as a straightforward grant of permission to use the land for a very limited purpose (hanging a hammock) in exchange for a promise to hold the landowner-defendants harmless from any injury that might result from that use.

Accordingly, because we do not find that the 2005 agreement was entered into to settle an ongoing dispute, it was not error for the trial justice to consider it as an objective manifestation of the defendants' superior title. As we held in Cahill, 11 A.3d at 93, although such a manifestation does not automatically invalidate the plaintiffs' claim, it is "poignantly relevant to the ultimate determination of claim of right and hostile possession during the statutory period." The clear and convincing standard presents a high hurdle to a would-be adverse possessor; the evidence proffered in this case fails to meet that hurdle.

## IV

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record of this case shall be returned to the Superior Court.

- 12 -



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** Joyce DiPippo, Individually and as Trustee of the Joyce DiPippo Living Trust dated June 10, 1992 et al. v. Louis Sperling et al.

**CASE NO:** No. 2012-14-Appeal.
(KC 09-968)

**COURT:** Supreme Court

**DATE OPINION FILED:** April 12, 2013

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:** Kent County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Brian P. Stern

**ATTORNEYS ON APPEAL:**

For Plaintiffs: Nicholas Gorham, Esq.

For Defendants: Barry J. Kusinitz, Esq.