March 16, 2026

**Supreme Court**

No. 2024-375-Appeal.
(WC 22-455)

Michelle A. Blechman et al.          :

v.                                   :

Donald Woodward.                     :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Michelle A. Blechman et al.　　　:

v.　　　　　　　:

Donald Woodward.　　　　:

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**　In this property dispute between neighbors, Michelle A. Blechman and James W. Blechman (collectively, plaintiffs), appeal from a Superior Court judgment, following a bench trial, in favor of the defendant, Donald Woodward.[1]　The plaintiffs argue that the trial justice erred: (1) in her determination that they failed to show hostile and adverse use of the disputed area by clear and convincing evidence; (2) by failing to conduct a proper analysis of each element of adverse possession under G.L. 1956 § 34-7-1; (3) by finding that the plaintiffs failed to establish the requisite ten-year period necessary to succeed on

---

[1] In the original complaint, Michelle A. Blechman was the sole plaintiff.  She filed suit against SB 222, LLC; the only members of SB 222, LLC were Donald and Dayna Woodward.  After trial, the trial justice granted plaintiff's motion to amend her complaint in order to add her husband, James W. Blechman, as a plaintiff. Further, the trial justice ordered that Donald Woodward be substituted as the named defendant because the property previously owned by SB 222, LLC, had been transferred to him personally.  For clarity, when necessary, plaintiffs will individually be referred to by their first names to avoid confusion.  No disrespect is intended.

an acquiescence claim; and (4) in dismissing the plaintiffs' claim for a prescriptive easement without complying with Rule 52(a) of the Superior Court Rules of Civil Procedure.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel[2]**

The parties in the present dispute are neighbors, owning and residing on abutting lots in the Town of South Kingstown, Rhode Island. The plaintiffs purchased their property (the Blechman property), located at 31 Shortie Way, on or about January 22, 2010. The defendant purchased his property (the Woodward property), located at 41 Shortie Way, on or about October 13, 2021. The Blechman property abuts the Woodward property along the northerly border of the Blechman property and the southerly border of the Woodward property. It is a portion of land

---

[2] The following facts are derived from the parties' agreed-upon statement of facts filed in the Superior Court as well as from the two-day bench trial that was held before the Superior Court on April 1 and May 29, 2024.

at this intersection, which plaintiffs contend comprises approximately 1,134.9 square feet (the disputed area), that is the subject of the current dispute. Per the metes and bounds description of the properties in their respective deeds, it is uncontested that the disputed area is included in defendant's deeded property. However, plaintiffs claim to have acquired title to, or alternatively, an easement over the disputed area by continuous use and maintenance, as if it were their own, for over ten years.

The parties obtained their respective properties from a common developer, EFC Development, LLC (EFC), owned and operated by Edward Ferland. At trial, Ferland testified that EFC owned the entire residential development at one point and built all the houses therein, necessarily including both plaintiffs' and defendant's houses. He further testified that an engineering company, DiPrete Engineering, had staked the boundary lines of the lots in the development around 2005 or 2006, years prior to the construction of either party's house.

The plaintiffs moved into their home on 31 Shortie Way in January 2010. Michelle testified that she and James began to maintain their yard and the disputed area in the spring of the same year. At the time, both areas were "[j]ust dirt." Michelle and James started to perform basic upkeep, including planting grass and trees, fertilizing, and raking. She testified that they treated the disputed area "like [they] did the rest of the yard."

Aside from physical maintenance of the disputed area, Michelle testified to several other purported uses by her family, stating that they would "walk on it, walk our dogs on it, play on it, use it as a means from getting from the front yard to the back." Further, for at least some portion of the alleged statutory time period, she testified, water from an irrigation system installed on her property would spray onto the disputed area, she regularly kept the area free of all kinds of debris, and her children would play on it in the winter when there was snow. Moreover, she testified that they used the disputed area to store bins, pool supplies, and a woodpile.

Before defendant purchased the Woodward property from EFC in October 2021, the lot remained a vacant piece of land. Ferland testified that the Woodward property was cleared "[p]robably within 30 feet" of the boundary with the Blechman property. The defendant moved into the Woodward property in September 2022. Michelle indicated that the first time she met him was that fall when she was outside mowing her lawn and the disputed area. She described their ensuing relationship as "confrontational, * * * aggressive, [and] frightening." She stated that defendant "came up to me, behind me, and just appeared and was very intimidating, and overbearing, and had this large shovel, and just started yelling at me." Additionally, Michelle stated that she found a property stake in the corner of 31 Shortie Way and the disputed area, claiming that the message, "We are watching you. Smile for the camera" was written on it and that it was written by Ferland.

Michelle testified that she continued to maintain the disputed area until defendant erected a fence on a date stipulated as being in October 2022. In November 2022, Michelle filed a complaint in the Washington County Superior Court, claiming, among other assertions, ownership of the disputed area by adverse possession and acquiescence, or, in the alternative, a prescriptive easement.[3] A trial ensued, and the trial justice heard testimony from both plaintiffs, Ferland, and Steven Kline, who was qualified as an expert witness in the field of "digital media forensics, which includes image comparison."

Ferland testified to several conversations he had with James, both before and after selling plaintiffs the Blechman property. Ferland began construction on the Blechman property in 2009, and he stated that plaintiffs wanted the house built as close as possible, within local zoning regulations, to the left side of the lot (the side that abuts the Woodward property) in order to have room for a wider driveway on the other side. Accordingly, he testified that the house was built with a twelve-foot setback from the Woodward property.

There was inconsistent testimony at trial as to conversations between James and Ferland concerning James inquiring about purchasing the Woodward property.

---

[3] Michelle made several other claims for relief in her original filing, including claims for a declaratory judgment, to quiet title, trespass, injunctive relief, ejectment, trespass to chattels, and trespass to land. Such claims are not pertinent to the appeal before this Court.

Ferland testified that, after the Blechman house was built, but prior to selling the Woodward property to defendant, he talked to James on "several occasions." Importantly, in a couple of these conversations James expressed to him that "he was looking to buy the two lots on either side of him * * * but it never went anywhere because he didn't want to pay for a buildable lot." Formal terms were never negotiated or committed to writing; however, Ferland definitively testified that there was an inquiry and that James was interested in purchasing the lot so that he would not have a neighbor. Conversely, James testified that he never had conversations with Ferland about the Woodward property.

Ferland also testified to other conversations with James during this time period. Specifically, he noted that they had a conversation about James wanting to plant trees "[a]long the property line between [the two properties]." Ferland stated that he thought it "was a good idea because it separates the two and it helped me out as far as privacy goes." When asked by opposing counsel on cross-examination if James specifically asked for his permission to plant the trees, Ferland said, "I don't know if he asked permission or he wanted to know if I had a problem with it, but we had a conversation about whether there would -- that would be an issue." After being confronted with his deposition testimony, Ferland stated that he agreed with his prior statement that James told him he was going to plant the trees. James testified

generally that he planted several trees in the disputed area, and specifically referenced two birch trees that were purchased in 2014.

Further, although James testified that he had no conversations with Ferland about the Woodward property, when specifically asked when the last time they spoke was, James recalled a conversation during which he asked Ferland if he could take some rocks from the Woodward property for a tree that had fallen down on the Blechman property. He originally testified that he got the rocks from the disputed area, but immediately changed his testimony and stated that he retrieved the rocks from "randomly about beyond the margins of the disputed area."

The plaintiffs also put forth an expert, Steven Kline, to testify at trial. Kline testified that he owned two digital media companies, one of which focuses on "the examination, comparison, and evaluation of digital media for legal matters." He testified that he reviewed photographs of the site, aerial photographs from the Rhode Island Geological Information Services database, and pictures from years both prior to and after construction of plaintiffs' house. In overlaying these pictures, he explained how the disputed area had changed and testified to the texture and color of the disputed area over time.

On September 10, 2024, the trial justice issued a bench decision. In regard to the adverse possession claim, she began, and ended, with the element of hostility. The trial justice stated that "[w]ith respect to the conversations between Mr. Ferland

and [James], the [c]ourt concludes that Mr. Ferland's recollection is the most logical and credible." She found that "after January, 2010, and before October, 2021, * * * [James] offered to purchase the property from the actual owner on two occasions. This evidence is significant and it negates the required element of hostility."

In addition, the trial justice pointed to further evidence "indicating plaintiffs' acknowledgment of EFC's superior title during the statutory period[,]" including the fact that "[James] sought permission from Mr. Ferland to retrieve rocks from the property" and "sought acquiescence from Mr. Ferland to plant trees in 2014 and 2015 * * *." The trial justice determined that all of these conversations, "when taken together and viewed objectively, clearly demonstrate the plaintiffs' recognition of EFC's superior title." She added that "[Michelle] noticed the property stake with indications of Mr. Ferland's ownership but did nothing to dispute it." Moreover, she found that Kline's testimony "did not provide a scintilla of assistance to this [c]ourt." The trial justice noted that plaintiffs' failure to establish hostility by clear and convincing evidence was fatal to their adverse possession claim.

Further, she found that plaintiffs' acquiescence claim failed because they were unable to establish the requisite ten-year period wherein both parties recognized that a boundary existed, also evidenced by the fact that James asked for Ferland's permission to retrieve rocks from the Woodward property and Michelle noticed stakes "with indications and did nothing." Lastly, she stated that "[w]ith respect to

the remaining claims, the denial of the claims for adverse possession and acquiescence is dispositive * * *." Final judgment entered in favor of defendant on September 18, 2024, and plaintiffs filed a timely notice of appeal.

## II

### Standard of Review

"It is well settled that this Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence." *Clark v. Buttonwoods Beach Association*, 226 A.3d 683, 690 (R.I. 2020) (quoting *Quillen v. Macera*, 160 A.3d 1006, 1010 (R.I. 2017)). "[T]his Court 'gives great deference to the trial justice's determinations of credibility because it was the trial justice who had the opportunity to observe the witnesses' live testimony and the witnesses' demeanor.'" *Sepulveda as Trustee of 7 Half Mile Road Living Trust v. Buffum*, 334 A.3d 98, 103 (R.I. 2025) (brackets and deletion omitted) (quoting *Anton v. Houze*, 277 A.3d 695, 705 (R.I. 2022)). "When the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for his or hers even though a contrary conclusion could have been reached." *Clark*, 226 A.3d at 690 (quoting *Quillen*, 160 A.3d at 1010).

- 9 -

## III

## Discussion

On appeal, plaintiffs first assign error to the trial justice's conclusion that they failed to meet their burden, by clear and convincing evidence, of showing hostile and adverse use of the disputed area. On this point, plaintiffs proffer three main contentions. First, they argue that the trial justice "relied on testimony that did not exist" in finding that Ferland testified that James "explicitly asked for permission to plant trees along the property boundary of 31 Shortie Way." They add that there was no discussion as to the location where the trees would be planted, and "[w]ithout any request for permission or discussion regarding the location of the alleged trees, there is no basis for the [c]ourt to conclude that [James] was granted permission to plant trees on the [d]isputed [a]rea." Further, they submit that the trial justice's reliance on Ferland's testimony that James wanted to plant trees to block the view of a neighboring house was "entirely unfounded" as a house was not built on the Woodward property until years later.

Second, plaintiffs question the credibility of Ferland's testimony recalling conversations with James in which James inquired about buying the two lots on either side of his property. They contend that, even if this testimony were to be accepted as true, any purported discussion between Ferland and James regarding acquiring the Woodward property "does not legally constitute an acknowledgment

- 10 -

of superior title or disrupt the continuous, hostile possession required for adverse possession" because there was no testimony or evidence establishing when the inquiries occurred. The plaintiffs assert that title vested in them on or about April 2020 and "[w]ithout any indication of whether the conversation took place before or after the statutory period had run, there is no basis for the [c]ourt to conclude that it could have disrupted the continuity of the [plaintiffs'] adverse possession claim."

Third, plaintiffs argue that the trial justice improperly relied on evidence that Michelle confirmed she saw a stake in the corner of the Blechman property as manifesting acknowledgment of Ferland's superior title, as "[t]he mere presence of property stakes does not affect the validity of the Blechman[s'] claims, particularly since the Blechmans continued to occupy, maintain and improve the [d]isputed [a]rea without any interference from Ferland."

For his part, defendant claims that Ferland actually did testify that sometime between 2009 and October 2021 James "sought his permission to plant trees along the common border of 31 Shortie Way and 41 Shortie Way" and thus the trial justice properly relied on this evidence. Further, he argues that the trial justice determined that the timeframe in which James inquired about purchasing the Woodward property was also within this period, pointing to the fact that Ferland testified that on at least two occasions between January 2010 and October 2021, James inquired about purchasing the Woodward property. The defendant notes that plaintiffs'

- 11 -

recitation is an inaccurate reflection of the record, and Ferland's testimony did support the trial justice's conclusion that the offers to purchase occurred during the statutory period.

"In Rhode Island, obtaining title by adverse possession requires actual, open, notorious, hostile, continuous, and exclusive use of the property under a claim of right for at least a period of ten years." *Cahill v. Morrow*, 11 A.3d 82, 88 (R.I. 2011). "A possessor's use is hostile if it is a use inconsistent with the right of the owner, without permission asked or given, such as would entitle the owner to a cause of action against the intruder for trespass." *Clark*, 226 A.3d at 691 (quoting *DiPippo v. Sperling*, 63 A.3d 503, 508 (R.I. 2013)). "Hostility of possession necessary to establish adverse possession implies the denial of the owner's title; and possession, however open and long it may be, is not adverse without the denial of the owner's title." *Picerne v. Sylvestre*, 122 R.I. 85, 92, 404 A.2d 476, 480 (1979). "[T]he pertinent inquiry centers on the claimants' objective manifestations of adverse use rather than on the claimants' knowledge that they lacked colorable legal title." *Tavares v. Beck*, 814 A.2d 346, 351 (R.I. 2003).

In her decision the trial justice cited the correct standard for determining hostile use, and then referenced several critical pieces of evidence in finding that plaintiffs had acknowledged EFC's superior title to the disputed area during the statutory period and, accordingly, that their claim was not hostile. She made note of

conversations between James and Ferland in which James offered to purchase the Woodward property sometime after January 2010, stating that it was not unreasonable to conclude from this evidence that James's objective manifestations indicated that he was aware of Ferland's superior title because "the [plaintiffs'] house was positioned so close to the defendant's property and the [plaintiffs] expressed desire for privacy."

Further, the trial justice noted that "the trial record is laced with additional evidence indicating plaintiffs' acknowledgment of EFC's superior title during the statutory period." She went on to reference Ferland's testimony that James asked his permission to retrieve rocks from the Woodward property, Michelle's acknowledgment of the property stake with "indications of Mr. Ferland's ownership" and failure to dispute it, and Ferland's testimony detailing his conversations with James about planting trees on the property line. In referencing the conversations pertaining to planting trees, at separate points in her decision the trial justice stated that James sought "acquiescence from Mr. Ferland to plant trees in 2014 and 2015" and James "asked [Ferland] for permission to plant trees along the property boundary of 31 Shortie Way." Ultimately, the trial justice concluded that "[w]hile there is evidence that the plaintiffs utilized portions of the disputed area, that use was not adverse to the defendant's claim of title."

It is clear to us that the trial justice considered multiple pieces of evidence put forth during trial and deemed that, as a whole, they demonstrated plaintiffs' acknowledgment of Ferland's superior title of the disputed area. As it pertains to Ferland's testimony regarding James planting trees, our review of the record indicates the following. Ferland originally testified that "[James] asked me about planting trees * * * and I said it was fine." When probed about this conversation on cross-examination, he stated "I don't know if he asked permission or he wanted to know if I had a problem with it, but we had a conversation about whether there would -- that would be an issue." After being confronted with his deposition testimony, Ferland then stated that he agreed with his prior statement that James told him he was going to plant the trees.

While it appears that the trial justice may have misstated Ferland's testimony by indicating that Ferland testified that James asked for his permission to plant the trees (although there was varying testimony from Ferland on the matter), we deem this alleged error harmless. This evidence was supplemented, critically, by James's inquiries about purchasing the Woodward property, Michelle's acknowledgment of the property stake with Ferland's message seemingly objecting to plaintiffs' use of the disputed area, and Ferland's granting permission to retrieve rocks from the Woodward property. The trial justice evidently considered all of this evidence in

reaching her ultimate conclusion that plaintiffs' use of the disputed area was not hostile.

Further, the record does not support plaintiffs' contention that no timeframe was established for when James's inquiry to purchase the Woodward property occurred. Ferland testified that "a couple of times he asked me -- he was looking to buy the two lots on either side of him, um, and but it never went anywhere because he didn't want to pay for a buildable lot." Counsel then inquired, "[S]o, after the house was built at 31 Shortie Way but before you sold the property to the [defendant], you had a couple of conversations with [James] about buying 41 Shortie Way?" Ferland answered affirmatively, "Yes." Michelle previously testified that plaintiffs moved into their house in January 2010, and it was stipulated that defendant acquired title to the Woodward property in October 2021. Thus, the majority of the time in which the inquiries to purchase may have occurred is within the ten-year period that plaintiffs contend their adverse possession claim accrued.

However, it is true that a fraction of time, whether that be from January 2020 or April 2020 through October 2021, falls outside of the ten-year period in which plaintiffs claim their title vested in the disputed area. The plaintiffs appear to latch onto this period, citing this Court's decision in *Cahill v. Morrow*, 11 A.3d 82 (R.I. 2011), and asserting that if the offers to purchase were made outside of when title already vested in the adverse possessor, the inquiries to purchase are irrelevant.

While we recognized in *Cahill* that "an offer to purchase does not automatically invalidate a claim already vested by statute," we also held that "the objective manifestations that another has superior title, made after the statutory period and not made to settle an ongoing dispute, are *poignantly relevant* to the ultimate determination of claim of right and hostile possession during the statutory period." *Cahill*, 11 A.3d at 93 (emphasis added). As there is no contended ongoing dispute prior to defendant purchasing the Woodward property, plaintiffs misstate the relevance of these inquiries, even if made after the purported statutory period had elapsed. *See DiPippo*, 63 A.3d at 509-10 (holding that the trial justice did not err in considering a letter evincing the plaintiff's acknowledgment of the defendant's superior title made after the ten-year statutory period had run in determining that the plaintiff's use of the disputed area was not hostile). Keeping in mind the poignant relevance of the inquiries to purchase and giving deference to the trial justice's credibility determinations and additional findings, we are persuaded that the trial justice was not clearly wrong in her conclusion that plaintiffs failed to prove hostility by clear and convincing evidence.

The plaintiffs also contend that the trial justice erred in failing to conduct a proper analysis of each element of adverse possession "as required" under § 34-7-1. They claim that in only addressing hostility, the trial justice's analysis was

incomplete and warrants reversal.  We disagree, and swiftly dispense of this alleged

error.  In full, § 34-7-1 provides:

> "Where any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action."

As addressed *supra*, it is well settled under Rhode Island law that obtaining

title by adverse possession requires that the claimant establish "actual, open,

notorious, hostile, continuous, and exclusive use of the property under a claim of

right for at least a period of ten years." *Union Cemetery Burial Society of North

Smithfield v. Foisy*, 292 A.3d 1205, 1214 (R.I. 2023) (brackets omitted) (quoting

*Clark*, 226 A.3d at 690).  Notably, this standard necessitates that *the claimant*

establish all of the above stated elements by clear and convincing evidence. *See id.*

In their papers, plaintiffs cite to *McGarry v. Coletti*, 33 A.3d 140 (R.I. 2011),

without explanation, for their contention that the trial justice's "incomplete analysis

warrants reversal."  In *McGarry*, this Court affirmed the Superior Court's

- 17 -

determination that the claimant failed to satisfy the open and notorious elements of adverse possession, giving deference to the trial justice's finding that the claimant's "less-than-obvious" maintenance of the disputed parcel was insufficient to rise to the clear and convincing evidence standard. *McGarry*, 33 A.3d at 146-47. We are unable to find any support for plaintiffs' contention in *McGarry* or elsewhere in our jurisprudence. Further, we are aware of no requirement that obligates the trial justice to analyze every element of adverse possession after determining that a claimant's failure to prove a single element defeats their claim. We refuse to impute this requirement onto the trial justice here, and accordingly, we decline to reverse on this ground.

The plaintiffs further aver that the trial justice erred in finding that they failed to establish the requisite ten-year period necessary for an acquiescence claim wherein both parties recognized that a boundary existed. They contend that "[t]he physical boundary line between the Blechman [p]roperty and Woodward [p]roperty was established back in the [s]pring of 2010 when the [plaintiffs] planted grass in the [d]isputed [a]rea right up to the large boulders situated on the Woodward [p]roperty." From that date, until at least October 2021, plaintiffs argue, "all parties treated the grass line up to the large boulders as the property line" and, had defendant not acquiesced to this boundary line, he "would have cleared the [d]isputed [a]rea at the time ECF cleared the lot on 41 Shortie Way." Further, plaintiffs argue that the

trial justice's reliance on testimony relating to Michelle's acknowledgment of the property stake and Ferland's permission to retrieve rocks from the Woodward property was clear error because both events occurred "after title had already vested in the [plaintiffs]." (Emphasis omitted.)

The defendant claims, however, that "[v]irtually no evidence was offered by the [plaintiffs] to establish when the requisite period to prove their acquiescence claim started or ended during the course of the trial." In response to plaintiffs mention of large boulders or a "rock wall" being a boundary marker, defendant notes that, when asked when the boulders were installed, Michelle testified that she was not sure of the date; and, further, James testified it was at the time they started construction on the Woodward property, this being October 2021. As such, he contends that the requisite ten-year time period was not established to prove an acquiescence claim.

"This Court has stated that the 'doctrine of acquiescence provides that owners of adjoining estates are precluded from denying a boundary line recognized by both owners for a length of time equal to that prescribed by the statute of limitations barring a right of reentry.'" *Urbonas v. Gullison*, 337 A.3d 673, 683 (R.I. 2025) (quoting *DeCosta v. DeCosta*, 819 A.2d 1261, 1264 (R.I. 2003)). This is a two-part test, as "[t]he party claiming ownership by acquiescence must show 'that a boundary marker existed and that the parties recognized that boundary for a period equal to

that prescribed in the statute of limitations to bar a reentry, or ten years.'" *DeCosta*, 819 A.2d at 1264 (quoting *Pucino v. Uttley*, 785 A.2d 183, 187 (R.I. 2001)). "A determination of acquiescence is a mixed question of law and fact." *Banville v. Brennan*, 84 A.3d 424, 431 (R.I. 2014) (quoting *Nye v. Brousseau*, 992 A.2d 1002, 1009 (R.I. 2010)). "The issue of what constitutes the boundaries of a parcel of land is a question of law, but the determination of where such boundaries are is a question of fact." *Id.* (brackets omitted) (quoting *Nye*, 992 A.2d at 1009). "Finally, 'whether the boundary is sufficiently obvious to command notice is a question of fact.'" *Id.* (quoting *Acampora v. Pearson*, 899 A.2d 459, 465 (R.I. 2006)).

In her decision, the trial justice rejected plaintiffs' claim for acquiescence, finding that it "fails because they are unable to establish the requisite ten-year period wherein both parties recognized a boundary existed." She went on to say that "[James] asked Mr. Ferland's permission to retrieve rocks from his property, and [Michelle] noticed the stakes with indications and did nothing."

It is undisputed that the respective properties sit on adjoining lots. However, upon our review of the record, it is clear that the trial justice did not err in finding that plaintiffs failed to establish an observable boundary marker for the requisite statutory period. The plaintiffs contend that the boundary marker was established at trial as (1) the grass line and/or (2) the boulders/rock wall. In relation to the grass line, both plaintiffs testified that Michelle first planted grass on the disputed area in

- 20 -

the spring of 2010 following their January 2010 occupancy. However, upon reviewing a photograph of the disputed area taken in the fall of 2010, both admitted that they did not see any "stems of grass" or "grass." Michelle further testified that she began to mow the grass in the area in the spring of 2011, a year after she alleged to have planted the grass, claiming she began "[a]s soon as the grass was coming up."

Further, plaintiffs suggest in their papers that the boulders seen in multiple photographs presented at trial established the boundary line "[f]rom the [s]pring of 2010 to at least October 2021 * * *." This contention is simply at odds with the record. Michelle testified that Ferland placed them there "at the behest of [her] neighbors * * *." When asked when they were put there, she stated that she did not know the exact date. James testified that he believed the boulders were placed when construction began on the Woodward property. The parties stipulated that defendant acquired title to the Woodward property in October of 2021, and Ferland testified that construction began thereafter.

The lack of a recognized boundary line is further buttressed, as the trial justice noted, by the fact that Michelle noticed and ignored a property stake designating the deeded property line and displaying a message seemingly objecting to plaintiffs' use, and that James asked permission from Ferland to retrieve rocks from the Woodward property. Although no concrete dates for these facts were established at trial, James

asking Ferland for permission to retrieve rocks suggests that Ferland still owned the property at that time, and while Michelle testified that she "believe[d]" defendant owned the property at the time she saw the stake, she also stated that Ferland wrote the message on it. In reviewing all of this evidence and giving substantial deference to the trial justice's findings, we cannot say that the trial justice's determination that plaintiffs failed to establish a clear boundary marker for the statutorily required ten-year period was clearly wrong.

Lastly, plaintiffs argue that the trial justice committed error in dismissing their claim for a prescriptive easement without complying with Rule 52(a) of the Superior Court Rules of Civil Procedure. They contend that "to the extent title to the [d]isputed [a]rea has not been acquired by adverse possession or acquiescence, the Blechmans had a prescriptive easement that allowed them to maintain, utilize and enjoy the [d]isputed [a]rea." The plaintiffs further submit that the trial justice dismissed this claim "without findings or conclusions," violating Rule 52(a) and necessitating remand.

"Rule 52(a) of the Superior Court Rules of Civil Procedure requires a trial justice in a nonjury case to make specific findings of fact upon which he or she bases his or her decision[,]" and further, "find the facts specifically and state separately its conclusions of law thereon." *Wilby v. Savoie*, 86 A.3d 362, 372 (R.I. 2014) (brackets and deletions omitted) (quoting *Connor v. Schlemmer*, 996 A.2d 98, 109 (R.I. 2010)).

This Court has held that a trial justice "need not engage in extensive analysis" to comply with the requirement of Rule 52(a). *Id.* at 372 (quoting *Connor*, 996 A.2d at 109). It is well settled that "[e]ven 'brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case[.]'" *Now Courier, LLC v. Better Carrier Corp.*, 965 A.2d 429, 434 (R.I. 2009) (quoting *Broadley v. State*, 939 A.2d 1016, 1021 (R.I. 2008)).

The trial justice specifically acknowledged the requirements of Rule 52(a), and after setting forth her findings and conclusions with respect to plaintiffs' adverse possession and acquiescence claims, found that the denial of such "is dispositive of the remaining claims." Thus, she held that "those claims are denied and dismissed." After a careful review of the entirety of the trial justice's bench decision, we are satisfied that her decision did not run afoul of the requirements of Rule 52(a).

Hostility is an identical element necessary to succeed on both an adverse possession and a prescriptive easement claim. *See Clark*, 226 A.3d at 690 (brackets omitted) ("To obtain property by adverse possession, * * * a claimant must prove actual, open, notorious, hostile, continuous, and exclusive use of * * * property under a claim of right for at least a period of ten years.") (quoting *DiPippo*, 63 A.3d at 508); *Drescher v. Johannessen*, 45 A.3d 1218, 1227 (R.I. 2012) ("To establish an easement by prescription, a claimant must show actual, open, notorious, hostile, and continuous use under a claim of right for at least ten years.") (quoting *Hilley v.*

- 23 -

*Lawrence*, 972 A.2d 643, 651-52 (R.I. 2009)). Thus, it is evident that the trial justice's determination that plaintiffs failed to prove hostility by clear and convincing evidence for their adverse possession claim precludes a finding that plaintiffs could succeed on their prescriptive easement claim.

As the trial justice sufficiently addressed hostility as to the plaintiffs' adverse possession claim, we are persuaded that her decision provides a complete confrontation and resolution of the issue. *See Donnelly v. Cowsill*, 716 A.2d 742, 747 (R.I. 1998) (stating that this Court has "never demanded that a trial justice make findings with respect to every witness or issue in which 'a full understanding of the issues' and the conclusions of the fact finder 'may be reached without the aid of separate findings'") (quoting *Anderson v. Town of East Greenwich*, 460 A.2d 420, 423-24 (R.I. 1983)). Accordingly, we see no cause to remand on this ground.

## IV

## Conclusion

For the reasons stated herein, the Superior Court judgment is affirmed. The record of this case shall be returned to the Superior Court.

- 24 -



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Michelle A. Blechman et al. v. Donald Woodward. |
| **Case Number** | No. 2024-375-Appeal.<br>(WC 22-455) |
| **Date Opinion Filed** | March 16, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Ryanna T. Capalbo, Esq. |
| | For Defendant:<br><br>Timothy J. Robenhymer, Esq. |